**Electronically Filed
Intermediate Court of Appeals
30281
30-APR-2013
08:28 AM**

NO. 30281

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


AKAKU:  MAUI COMMUNITY TELEVISION,
a domestic non-profit corporation, Plaintiff-Appellant,
v. KEALI'I S. LOPEZ, Director, Department of Commerce and
Consumer Affairs, State of Hawai'i, AARON FUJIOKA, Administrator,
State Procurement Office, State of Hawai'i, and DEPARTMENT OF
COMMERCE AND CONSUMER AFFAIRS, Defendants-Appellees


APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CIVIL NO. 07-1-0278(1))

MEMORANDUM OPINION
(By:  Nakamura, Chief Judge, Foley and Leonard, JJ.)

Plaintiff-Appellant Akaku: Maui Community Television
(**Akaku**) appeals from a December 9, 2009 Final Judgment (**Judgment**)
entered by the Circuit Court of the Second Circuit (**Circuit
Court**) in favor of Defendants-Appellees Keali'i S. Lopez, the
Director of the Hawai'i Department of Commerce and Consumer
Affairs (**Director**), Aaron Fujioka, the Administrator of the State
Procurement Office (**SPO**), and the Department of Commerce and
Consumer Affairs (**DCCA**).[1/]  The Circuit Court granted the DCCA's
motion for summary judgment and determined that, under Hawai'i
Revised Statutes (**HRS**) chapter 440G, the Director had the
authority to use the State Procurement Code (**Code**), set forth in
HRS chapter 103D, to designate public, educational, and
governmental (**PEG**) access organizations.  On appeal, Akaku argues

_____

[1/]    The Honorable Joel E. August presided.

that the Circuit Court erred when it denied Akaku's motion for summary judgment and renewed motion for summary judgment, and when it granted the DCCA's motion for summary judgment, because: (1) HRS chapter 103D prohibits the DCCA from using the Code to designate PEG access organizations, (2) the Director does not have the authority under HRS chapter 440G to use the Code to designate, and (3) policy considerations disfavor use of the Code to designate PEG access organizations. For the reasons set forth below, we affirm the Circuit Court's Judgment.

I.   BACKGROUND

    A.   The Director's Designation of PEG Access Organizations

        Pursuant to applicable law, the Director has the authority to issue cable television franchises to cable operators and to require these cable operators to set aside channels and funding for PEG access. See 47 U.S.C. § 521, et seq.; see also HRS chapter 440G.[2]  In Maui County and Lahaina, at times relative to this appeal, the Director had issued cable television franchises to Time Warner Entertainment Company, L.P. (**Time Warner**). Time Warner was required to set aside five channels for PEG access use and pay fees to the Director or the Director's designee.

        On June 17, 1999, the (former) Director contracted with Akaku and designated it as the PEG access organization in Maui "to (among other things) manage and operate the PEG access channels, train the public to use the PEG facilities and equipment to create programs, and cablecast the programs created and submitted by the public on [Time Warner's] channels in Maui County and Lahaina." Later, when reviewing the PEG access services contracts with Akaku and other PEG access organizations

---

[2]     Federal law does not mandate PEG access and allows states to determine the amount of PEG access to provide. See 47 U.S.C. § 521, et seq. In Hawai'i, cable operators are required to provide at least three PEG access channels as well as funds for PEG access facilities and equipment, and the Director is given discretion in implementing HRS chapter 440G. See, e.g., HRS §§ 440G-4, -7, -8, -8.2, -8.3, -10, -12.

on Oʻahu, Hawaiʻi, and Kauaʻi,[3/] the DCCA asked the Department of the Attorney General whether the contracts were subject to the Code.  The contracts were determined to be subject to the Code, unless an exemption in HRS § 103D-102(b) applied.

On November 4, 2005, the DCCA submitted a request to the SPO for a temporary exemption from the Code.  On December 12, 2005, the SPO disapproved of the DCCA's exemption request, finding that the DCCA's contracts with PEG access organizations were subject to the Code.  After the DCCA considered public comments in February 2006, regarding whether to issue a Request for Proposals (**RFP**) pursuant to the Code or seek a permanent exemption from the Code, the DCCA submitted a request to the SPO on April 10, 2006, for a permanent exemption from the Code. Although the SPO again found that PEG access services contracts should be awarded in accordance with the Code, the SPO allowed the DCCA to be exempt from the Code from July 1, 2006, to June 30, 2007, to ensure that PEG access services would continue until the DCCA could complete the procurement process guidelines in accordance with the Code and award new contracts.

The DCCA requested the SPO's assistance in preparing a draft RFP.  Public comments were considered on two draft RFPs for PEG access services, and on July 30, 2007, the SPO issued "RFP No.-07-043-SW, Sealed Proposals to Operate, Maintain, and Manage Public, Educational, and Governmental Access Channels, Funds, Facilities, and Equipment for the State of Hawaiʻi" in accordance with the Code.

---

[3/]     The four PEG access organizations were:  Akaku on Maui; Olelo: The Corporation for Community Television on Oʻahu; Na Leo Oʻ Hawaiʻi, Inc. on Hawaiʻi; and Hoʻike:  Kauaʻi Community Television, Inc. on Kauaʻi.

B.    The Circuit Court Proceedings

On August 3, 2007, Akaku filed its complaint, asserting that the DCCA needed to follow an administrative rule when designating PEG access organizations.  Akaku sought to enjoin the DCCA from using competitive sealed bidding, pursuant to the Code, to select PEG access organizations.

On August 6, 2007, Akaku filed a motion for preliminary injunction.  On November 15, 2007, the Circuit Court denied Akaku's motion, but it strongly encouraged the DCCA to adopt a rule, pursuant to the formal rulemaking process under HRS § 91-3, that would govern the DCCA's process of designating and selecting PEG access organizations under HRS chapter 440G.

On November 10, 2008, the DCCA adopted Hawaii Administrative Rules (**HAR**) § 16-131-70, which states:

> § 16-131-70 Designation and selection of access organizations. (a) For purposes of this section, "PEG" means public, educational, and governmental.
> (b)    The director shall comply with the applicable provisions of chapter 103D, HRS, when designating and selecting an access organization to oversee the development, operation, supervision, management, production, or broadcasting of programs on PEG channels obtained under chapter 440G, HRS.
> (c)    When designating and selecting an access organization, the director shall, at a minimum, consider the following factors or criteria:
>> (1)    The management and technical experience of the organization, and its existing or proposed staff;
>> (2)    The broadcast or cablecast media and telecommunications experience of the organization and its existing or proposed staff;
>> (3)    The ability of the organization, and its existing or proposed staff, to provide the PEG access services requested by the director;
>> (4)    The organization's short-term and long-term plans for PEG access services for a designated franchise area;
>> (5)    The financial capability of the organization;
>> (6)    The amount of funding required by the organization to provide the PEG access services requested by the director;
>> (7)    The ability of the organization to provide reports, audits, and other information to the director;

(8)     Whether the organization agrees to expand the
        marketplace of ideas, and is committed to
        allowing members of the public to express their
        First Amendment free speech rights;
(9)     The organization's prior dealings and
        relationships with the State, if any;
(10)    The organization's references;
(11)    Other additional services, if any, the
        organization proposes to provide to the State
        and the public, and
(12)    Other factors or criteria deemed applicable or
        necessary by the director.
(d)     The relative weights of the factors or criteria
considered by the director under subsection (c) shall be
specified in any applicable request for proposals or
invitation for bids issued under chapter 103D, HRS. [Eff
12/3/08] (Auth: HRS §§440G-3, 440G-12) (Imp: HRS §§440G-3,
440G-12)

HAR section 16-131-70 became effective on December 3, 2008.

On December 20, 2007, Akaku filed a motion for summary judgment, a permanent injunction, attorney's fees, and costs, which the Circuit Court denied in part and continued in part on May 27, 2008. The Circuit Court determined that the use of the Code to designate PEG access organizations in accordance with HAR § 16-131-70 did not exceed the Director's authority when the DCCA created the RFP criteria and had the right to approve the final awardee.

On January 23, 2009, Akaku amended its complaint, arguing that the DCCA's new administrative rule was invalid because it exceeded the statutory authority delegated to the DCCA and its Director. On April 30, 2009, Akaku filed a renewed motion for summary judgment. On June 1, 2009, the DCCA filed a motion for summary judgment. On October 26, 2009, the Circuit Court denied Akaku's renewed motion and granted the DCCA's motion, determining that the DCCA had the authority to use the procedures of the Code for the designation of PEG access organizations. The Circuit Court reiterated that the Director had the authority under HRS chapter 440G to use the Code, stating:

> The Court also previously indicated (in its May 27, 2008
> Order) that Defendant DCCA has the authority to subject the
> designation and selection process of PEG access

> organizations to the requirements set forth in the State's
> Procurement Code ("Code") or any other requirements that
> Defendant DCCA deems reasonable.  Defendant DCCA has chosen
> to follow the Code and is free to choose another
> [designation and selection process] at some point by going
> through the rulemaking process again.  Therefore,
> Plaintiff's request for declaratory judgment to invalidate
> the use of the Code to designate and select PEG access
> organizations is denied.

On December 9, 2009, the Circuit Court entered the Judgment.  On January 7, 2010, Akaku timely filed a notice of appeal.  On appeal, "Akaku seeks a judgment . . . that DCCA's new rule exceeds the statutory authority granted to the agency and that the Director of the DCCA may not use the procurement process in fulfilling his duty to 'designate' access organizations."

C.    Act 19

After Akaku filed its appeal, Act 19 of the 2011 Hawai'i Session Laws (**Act 19**) was enacted and codified at HRS § 440G-8.3.  See 2011 Haw. Sess. Laws Act 19, § 1; see also HRS § 440G-8.3 (Supp. 2011).  Act 19 amended HRS chapter 440G by adding a new section entitled, "Designation of access organizations for public, educational, or governmental access channels."  2011 Haw. Sess. Laws Act 19, § 1.  HRS § 440G-8.3(a) states:

> The [D]irector may designate an access organization to
> oversee the development, operation, supervision, management,
> production, and broadcasting of programs of public,
> educational, or governmental access facilities obtained
> under section 440G-8; *provided that the designation shall be
> exempt from chapter 103D.*

HRS § 440G-8.3(a)  (emphasis added).

Thus, HRS § 440G-8.3(a), as amended, exempts PEG designation from compliance with the Code.  Act 19 became effective on July 1, 2011, and is scheduled to sunset on June 30, 2014.  2011 Haw. Sess. Laws. Act 19, § 4; HRS § 440G-8.3.

II.  POINTS OF ERROR

Akaku raises three related points of error on appeal, contending that the Circuit Court erred when it:  (1) denied Akaku's motion for summary judgment, preliminary injunction,

attorneys' fees, and costs, by concluding that the DCCA's use of the Code to designate PEG access organizations did not exceed the Director's authority; (2) granted the DCCA's motion for summary judgment, and (3) denied Akaku's renewed motion for summary judgment.

III. APPLICABLE STANDARD OF REVIEW

> In determining whether an agency determination should be given deference, the standard to be applied is as follows:

>> [W]hen reviewing a determination of an administrative agency, we first decide whether the legislature granted the agency discretion to make the determination being reviewed. If the legislature has granted the agency discretion over a particular matter, then we review the agency's action pursuant to the deferential abuse of discretion standard (bearing in mind that the legislature determines the boundaries of that discretion). If the legislature has not granted the agency discretion over a particular matter, then the agency's conclusions are subject to de novo review.

Olelo: The Corp. for Cmty. Television v. Office of Info. Practices, 116 Hawaiʻi 337, 344, 173 P.3d 484, 491 (2007) (citation omitted).

> This court reviews the interpretation of a statute *de novo*.

>> When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

>> When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

>> In construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

>> This court may also consider the reason and spirit of the law, and the cause which induced the legislature to enact it to discover its true meaning. Laws in pari materia, or upon the same subject matter, shall be construed

7

> with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another. . . .
>
> Where an administrative agency is charged with the responsibility of carrying out the mandate of a statute which contains words of broad and indefinite meaning, courts accord persuasive weight to administrative construction and follow the same, unless the construction is palpably erroneous. . . .
>
> Stated differently:
>
> Where an agency is statutorily responsible for carrying out the mandate of a statute which contains broad or ambiguous language, that agency's interpretation and application of the statute is generally accorded judicial deference on appellate review. . . . However, an interpretation by an agency of a statute it administers is not entitled to deference if the interpretation is plainly erroneous and inconsistent with both the letter and intent of the statutory mandate.

Haole v. State of Hawaiʻi, 111 Hawaiʻi 144, 149-50, 140 P.3d 377, 382-83 (2006) (citations and brackets omitted; format altered).

IV. DISCUSSION

    A.    Mootness

        First, we consider whether the issues raised by Akaku are moot because this court has a duty "to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." Wong v. Bd. of Regents, Univ. of Hawaiʻi, 62 Haw. 391, 394-95, 616 P.2d 201, 204 (1980) (citations omitted). The mootness doctrine applies "where events subsequent to the judgment of the trial court have so affected the relations between the parties that the two conditions for justiciability relevant on appeal -- adverse interest and effective remedy -- have been compromised." Wong, 62 Haw. at 394, 616 P.2d at 203-04; see also Alakai Na Keiki, Inc. v. Matayoshi, 127 Hawaiʻi 263, 270, 277 P.3d 988, 995 (2012) (citation omitted), stating:

> A case is moot if it has lost its character as a present, live controversy of the kind that must exist if courts are to avoid advisory opinions on abstract propositions of law.

> The rule is one of the prudential rules of judicial self-
> governance founded in concern about the proper -- and
> properly limited -- role of the courts in a democratic
> society.  We have said the suit must remain alive throughout
> the course of litigation to the moment of final appellate
> disposition to escape the mootness bar.

Kaho'ohanohano v. State, 114 Hawai'i 302, 332, 162 P.3d 696, 726 (emphasis deleted) (citations omitted).

As discussed above, Act 19 amended HRS § 440G-8.3(a) to exempt the Director's designation of PEG access organizations from compliance with the Code.  Section 4 of Act 19, however, includes a sunset provision, which provides that Act 19 automatically terminates on June 30, 2014.

Even assuming *arguendo* that, in light of Act 19's exemption, this case currently lacks a live controversy, we conclude that this case falls within the "public interest" exception to the mootness doctrine.  "[W]hen the question involved affects the public interest and an authoritative determination is desirable for the guidance of public officials, a case will not be considered moot."  Slupecki v. Admin. Dir. of Courts, State of Hawai'i, 110 Hawai'i 407, 409 n.4, 133 P.3d 1199, 1201 n.4 (2006) (citations omitted).  The court considers three criteria to determine whether the public interest exception should apply:

> Among the criteria considered in determining the existence
> of the requisite degree of public interest are [(1)] the
> public or private nature of the question presented, [(2)]
> the desirability of an authoritative determination for the
> future guidance of public officers, and [(3)] the likelihood
> of future recurrence of the question.

Johnston v. Ing, 50 Haw. 379, 381, 441 P.2d 138, 140 (1968) (citation omitted).

Here, all three prongs of the public interest exception test are met.  As both parties contend, there is sufficient public interest implicated to meet the first prong of the test.  See Kaho'ohanohano, 114 Hawai'i at 333, 162 P.3d at 727 (finding that there was "a matter of public interest sufficient to meet

the first prong of the test" where there was an alleged matter of public interest at stake and a significant number of people involved). The DCCA's designation of PEG access organizations affects a significant number of people in Hawai'i who utilize public access television to express their views or otherwise present creative expressions or who simply tune in to public access channels to see and hear from others in the community. Additionally, "[t]he procurement of goods and services by governmental bodies 'clearly involves matters of public concern.'" Okada Trucking Co., Ltd. v. Bd. of Water Supply, 99 Hawai'i 191, 197, 53 P.3d 799, 805 (2002) (quoting CARL Corp. v. State, Dept. of Educ., 93 Hawai'i 155, 165, 997 P.2d 567, 577 (2000)). The second prong is met because "it is obvious that determination of the matter would assist public officers in the future." Kaho'ohanohano, 114 Hawai'i at 333, 162 P.3d at 727 (citation omitted). Because HRS § 440G-8.3 is scheduled to be repealed on June 30, 2014, a decision in this case will provide guidance to the Director for designations made after that date. Lastly, the third prong is met because if the DCCA reverts to using the Code after June 30, 2014, Akaku or another aggrieved PEG access organization will likely raise this issue again. Accordingly, this case is not moot.

B.    Applicability of HRS Chapter 103D

Akaku argues that the Code does not apply to PEG access services contracts because State funds are not used to fund PEG access organizations, the funding does not fit into any of the categories of "consideration" in HRS § 103D-102(a), and the DCCA's designation does not involve "procurement" by the State under HRS § 103D-104.[4]

---

[4]    As the issue is not before us, we do not analyze Akaku's claims under Act 19. We note, however, that HRS § 103D-102(d) provides, in part: "Governmental bodies making procurements which are exempt from this chapter are nevertheless encouraged to adopt and use provisions of this chapter and its implementing rules as appropriate."

We conclude, however, that Akaku reads HRS § 103D-102(a) too narrowly.  HRS § 103D-102(a) sets forth the application of the Code to State contracts:

> This chapter shall apply to all procurement contracts made by governmental bodies whether the consideration for the contract is cash, revenues, realizations, receipts, or earnings, any of which the State receives or is owed; in-kind benefits; or forbearance; provided that nothing in this chapter or rules adopted hereunder shall prevent any governmental body from complying with the terms and conditions of any other grant, gift, bequest, or cooperative agreement.

HRS § 103D-102(a).

The Code defines the terms "procurement," "contract," and "services" as follows:

> "Procurement" is defined as "buying, purchasing, renting, leasing, or otherwise acquiring any good, service, or construction.  The term also includes all functions that pertain to the obtaining of any good, service, or construction, including description of requirements, selection and solicitation of sources, preparation and award of contracts, and all phases of contract administration."
>
> "Contract" is defined as "all types of agreements, regardless of what they may be called, for the procurement or disposal of goods or services, or for construction."
>
> "Services" is defined as "the furnishing of labor, time, or effort by a contractor, not involving the delivery of a specific end product other than reports which are merely incidental to the required performance."

HRS § 103D-104.

A PEG access services contract is clearly a "contract" between a governmental agency and a third party for the "procurement" of PEG programming-related "services."  In other words, a PEG access services contract is an agreement between the DCCA and a PEG access organization for the acquiring of the PEG access organization's labor, time, and effort to, for example, "manage and operate the PEG access channels, train the public to use the PEG facilities and equipment to create programs, and cablecast the programs created and submitted by the public on [a cable operator's] channels[.]"  See HRS § 103D-104.

Contrary to Akaku's argument, the Director's designation and selection of PEG access organizations to provide a service to the public plainly falls within the broad definition of "procurement."  See HRS § 103D-104.  The Director's designation is a manner of "acquiring" that organization's services.  See HRS § 103D-104.  Even if it was not considered to be an acquisition of the access organization's services, the Director's designating and selecting an organization is, at the very least, a "function[] that pertain[s] to the obtaining of [a] service[.]"  HRS § 103D-104.[5/]

C.   HAR Section 16-131-70

Akaku argues that HAR § 16-131-70, which requires the DCCA to comply with the applicable provisions of the Code when designating PEG access organizations, exceeds the statutory authority granted to the DCCA and its Director under HRS chapter 440G.  We disagree.  An agency's authority includes both express and implied powers.  The supreme court has stated that

> an administrative agency can only wield powers expressly or implicitly granted to it by statute.  However, it is well established that an administrative agency's authority includes those implied powers that are *reasonably necessary to carry out the powers expressly granted*.

Haole v. State, 111 Hawai'i 144, 152, 140 P.3d 377, 385 (2006) (emphasis in original) (citation omitted).

Here, the Director has the authority under HRS § 440G-16 to adopt administrative rules to implement HRS chapter 440G.  See HRS § 440G-16 (1993).  Pursuant to this authority, the Director promulgated HAR § 16-131-70 in accordance with Hawai'i

---

[5/]     We note that even if the procurements made by a state agency are exempt from the Code, the agency is not precluded from using or following the Code pursuant to HRS § 103D-102(d).  HRS § 103D-102(d) provides, in relevant part: "Governmental bodies making procurements which are exempt from this chapter [103D] are nevertheless encouraged to adopt and use provisions of this chapter and its implementing rules as appropriate."  HRS § 103D-102(d).  This evidences a legislative intent to encourage government agencies to follow the Code, even if the procurements are exempt.

Administrative Procedure Act (**HAPA**) rulemaking requirements, as set forth in HRS chapter 91.

Contrary to Akaku's assertion, the adoption of a rule specifying the method by which the Director will designate and select PEG access organizations is not in conflict with the Director's authority under HRS chapter 440G.  An "access organization" is defined as "any nonprofit organization designated by the [D]irector to oversee the development, operation, supervision, management, production, or broadcasting of programs for any channels obtained under section 440G-8[.]" HRS § 440G-3.  The law is silent as to the method of designating PEG access organizations.  The Director's authority necessarily includes "those implied powers that are reasonably necessary to carry out the powers expressly granted."  Haole, 111 Hawai'i at 152, 140 P.3d at 385 (emphasis deleted).  To carry out his express power to designate PEG access organizations, the Director has the implied power under HRS chapter 440G to specify the method by which he would designate PEG access organizations.  See id.  Consequently, the DCCA did not exceed its authority in promulgating HAR § 16-131-70 to guide the designation process.

Nor does HAR § 16-131-70 impermissibly delegate the discretion to designate PEG access organizations to the SPO. Contrary to Akaku's assertions, nothing in the rule states or even suggests that the Director and the DCCA are delegating their discretionary function to make the actual selection of PEG access organizations.  Instead, HAR § 16-131-70(b) requires compliance with the Code, which specifies the process and procedures that agencies need to follow, HAR § 16-131-70(c) specifies enumerated factors or criteria that the Director must (at a minimum) consider, and HAR § 16-131-70(d) requires that the relative weights of such factors or criteria must be specified as part of the process for requesting proposals or inviting bids.

D.    Public Policy

Finally, Akaku argues that public policy considerations disfavor the use of the Code to designate PEG access organizations.  As set forth above, "[w]here an agency is statutorily responsible for carrying out the mandate of a statute which contains broad or ambiguous language, that agency's interpretation and application of the statute is generally accorded judicial deference[.]" Haole, 111 Hawai'i at 150, 140 P.3d at 383 (citations and brackets omitted).  HRS chapter 440G contains broad language, granting considerable discretion to the DCCA and the Director, and therefore the DCCA's interpretation and application of the statute is entitled to deference, as is the SPO's determination of the applicability of the Code to PEG access services contracts.  Indeed, it is the "policy of the State [to utilize the Code] to foster broad-based competition. Full and open competition shall be encouraged.  With competition, the State and counties will benefit economically with lowered costs."  Communications-Pacific, Inc. v. City and Cnty. of Honolulu, 121 Hawai'i 527, 532, 221 P.3d 505, 510 (App. 2009). The Code allows the State and public to maximize the purchasing value of funds by engaging entities in the competitive bidding process.  CARL Corp v. State, Dept. of Educ., 85 Hawai'i 431, 456, 946 P.2d 1, 26 (1997).  It is speculative at best for Akaku to argue that the marketplace of ideas will be inhibited if subjected to a competitive bidding process.

V.    CONCLUSION

         For these reasons, the Circuit Court's December 9, 2009 Judgment is affirmed.

         DATED:   Honolulu, Hawai'i, April 30, 2013.

On the briefs:

Anthony L. Ranken
(Ranken & Drewyer)
for Plaintiff-Appellant

Rodney J. Tam
James F. Nagle
Deborah Day Emerson
Deputy Attorneys General
for Defendants-Appellees
KEALI'I S. LOPEZ, Diretor,
Department of Commerce and
Consumer Affairs, State of
Hawai'i, and DEPARTMENT OF
COMMERCE AND CONSUMER AFFAIRS

Patricia Ohara
Diane Erickson
Deputy Attorneys General
for Defendant-Appellee
AARON FUJIOKA, Administrator,
State Procurement Office,
State of Hawai'i

Chief Judge

Associate Judge

Associate Judge